**In re David Bendel HERTZ and Barbara Valentine Hertz, Debtors.**

**Bankruptcy No. 82 B 11446.**

United States Bankruptcy Court, S.D. New York.

March 16, 1984.

Moore, Berson, Lifflander & Mewhinney, New York City, for European American Bank.

European American Bank, pro se.

Epstein, Reiss & Goodman, New York City, for debtors.

Kensington, James, Ressler & Taub, New York City, for the Creditors Committee.

Thomas Gelb, New York City, for Chemical Bank.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Two unsecured creditors, European American Bank ("EAB") and the law firm of Moore, Berson, Lifflander & Mewhinney ("MBLM") have moved to disallow a portion of the unsecured claim of Chemical Bank ("Chemical") and to revoke the order confirming the reorganization plan of David Bendel Hertz and Barbara Valentine Hertz ("Debtors").

After a hearing, and upon review of all the papers submitted and the applicable law, this Court denies the motion to revoke the order of confirmation and grants, in part, the motion to disallow a portion of the Chemical claim.

### Background

The debtors filed a joint petition for relief under chapter 11 of the Bankruptcy Reform Act of 1978 ("Code") on August 3, 1982. A committee of seven unsecured creditors, including EAB and MBLM, was appointed. The schedules attached to the Debtors' petition included a debt of $48,-000.00 owed to Chemical. The debt arose pursuant to the Debtors' guaranty of the debts of an entity known as Prime Time Publications, Inc. ("Prime Time") (now before this Court in a chapter 7 proceeding). The debts guaranteed included a loan by Chemical to Prime Time which was evidenced by a note for $48,000.00 plus interest.

The Debtors' proposed a plan of reorganization ("Plan") provided for the payment without interest, of 100 percent of the claims of unsecured creditors over a four year period. A hearing on the adequacy of the Debtors' disclosure statement was held on May 10, 1983, at which time EAB and MBLM raised certain objections to the Plan. Eventually an amended disclosure statement was approved by order of this Court dated May 26, 1983. At that time the Court also set June 13 as the last day for filing proofs of claim and for voting on the Plan. Soon thereafter, on June 15, a hearing on the confirmation of the Plan was held. At that hearing the Debtors

demonstrated compliance with the Code requirements for confirmation including the acceptance of the Plan by 15 of the 17 unsecured creditors who were eligible to vote for or against the Plan which represented 67.1628 percent of the amount of the unsecured debt. See 11 U.S.C. §§ 1126(c), 1129. EAB and MBLM, although members of the class that voted in favor of confirmation of the Plan, voted against the Plan.

The Plan was confirmed by an order of the Court dated June 16, 1983. Pursuant to the Plan, the Debtors issued promissory notes, executed an escrow agreement and deeded certain land.

*Positions of the Parties*

EAB and MBLM now move, apparently on their own and not on behalf of the creditors committee, to disallow any portion of Chemical's claim in excess of $48,000.00 and move by way of a second motion, to revoke the order of confirmation. The objection to the claim is based on the allegation that the $48,000.00 debt owed to Chemical was improperly adjusted upward by means of a tardily filed proof of claim. The proof of claim in the amount of $61,963.68 was filed by Chemical on June 15, 2 days after the bar date for filing claims had passed. The excess over $48,000.00 reflects interest allegedly due on the note. EAB and MBLM object to the increase on the grounds that the proof of claim was not timely filed and was not supported by sufficient documentation. The movants also allege that the increase, if indeed reflective of pre-petition interest, should be disallowed as usurious.

The motion to revoke the order of confirmation, although based on a number of different grounds, focuses as well on the upward adjustment of Chemical's claim. Apparently the $61,963.68 Chemical claim, and corresponding ballot which was cast in favor of the Debtor's Plan, provided the margin of victory needed to secure the acceptance of the Plan by the class of unsecured creditors. The $48,000.00 figure which was listed in the Debtors' schedules as the amount owed to Chemical on the Prime Time guaranty would not have provided this margin. EAB and MBLM acknowledge this and move for revocation on the grounds that the Chemical claim, at least for voting purposes, should have been limited to the lower $48,000.00 figure. They base their arguments on the grounds outlined above, regarding their objection to the Chemical claim, as well as on the assertion that Chemical apparently had filed its ballot in favor of the Plan after the bar date for voting had passed. The movants also contend, in support of their motion to revoke, that the last minute adjustment of Chemical's claim should not have occurred without notice and a hearing, and was therefore procedurally defective.

In opposition to the motions brought on by EAB and MBLM, both the Debtors and Chemical question the movants' standing as individual creditors to object to Chemical's $61,963.68 claims, and oppose the suggestion that Chemical's proof of claim should be disallowed on the grounds of timeliness. In addition, the Debtors explain that during the course of balloting it became evident that certain creditors' addresses had been listed incorrectly on the Debtor's schedules, thus denying those creditors the opportunity to file proofs of claim. They argue that it was therefore necessary and proper to permit those creditors, presumably including Chemical, the opportunity to file claims after the bar date, and in amounts higher than those amounts scheduled.[1] Moreover, the respondents argue, the Chemical claim for $61,963.68 did not reflect a usurious rate of pre-petition interest on the $48,000.00 note, but included the entire amount of interest, at a lawful rate, over both the pre-and post-petition period. The Debtors and Chemical point out that even if post-petition interest were excluded from Chemi-

---

1. According to Chemical, however, the late filing of its proof of claim was not due to lack of proper notice. Moreover, whereas other creditors whose addresses had been mislisted nevertheless were able to timely file ballots in favor of the Plan, only Chemical's ballot, it appears, was filed after the bar date along with its proof of claim.

cal's unsecured claim, the amount remaining would, nevertheless, have provided the margin needed for class acceptance.

Finally, the Debtors level changes of bad faith against EAB and MBLM for embarking upon frivolous and vexatious litigation, and request that the Court assess costs against the movants.

*Discussion*

A. *Objection to the Chemical Claim.*

Pursuant to Code section 1111(a):

A proof of claim or interest is *deemed filed* under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated. (emphasis added). .

Along with their petition, the Debtors filed a schedule of assets and liabilities which listed an undisputed, fixed, liquidated $48,000.00 Chemical claim. Pursuant to the Code section reproduced above, a Chemical proof of claim for $48,000.00 was therefore timely filed. *See In re Collins Mfg. Co.*, 19 B.R. 535 (Bkrtcy.E.D.Tenn. 1982). Indeed, the bar order issued by the Court which set the deadline for filing proofs of claim contemplated as much. By its terms, the order applied only to unlisted claims, or claims listed as disputed, contingent or unliquidated as to amount.[2]

■ The $61,963.68 proof of claim filed by Chemical merely amended the already timely filed claim to include interest on the claim. Although filed after the bar date, it did not seek a recovery on any new or different claim.[3] *See In re Globe Solvents Co., Inc.*, 397 F.Supp. 544 (E.D.Pa.1975). In such cases, amendments to timely filed proofs of claim should be freely permitted unless material equitable considerations, such as the claimant's bad faith or dilatory behavior, suggest otherwise. *See In re Futuronics Corp.*, 23 B.R. 281, 83 (D.C.S. D.N.Y.1982). In every instance, however, "the crucial question is whether the opposing party would be unduly prejudiced by the amendment." *Id.*

■ In applying this standard to the case at bar, the Chemical amendment clearly should be allowed. No one disputes the fact that the Debtors guaranteed the $48,-000.00 Prime Time note. Nor does anyone deny that the Debtors' liability to Chemical was reflected on their schedules well before the June 13 bar date for filing claims had passed. Similarly, no one suggests that the $48,000.00 scheduled figure represents anything other than the bare principal amount owed, exclusive of interest. Moreover, increasing the Chemical claim to reflect an amount attributable to interest does not materially impact on any creditor's interest in the Plan since it does not reduce the proposed payout under the Plan. Plainly, therefore, no prejudice will result in permitting the amendment. EAB and MBLM's unsubstantiated assertions that the proof of claim filed by Chemical was without proper documentation and that it reflected a claim which is the product of a usurious rate of interest are without any legal or factual support.[4] Their charges of

---

2. According to Collier, in addition to satisfying the literal requirements of section 1111(a), a claim must also be scheduled in the proper amount before that section can be said to apply. 5 *Collier on Bankruptcy* ¶ 1111.01[3] (15th ed. 1983). This, however, goes beyond the plain meaning of the statute. Moreover, even if one was to accept this interpretation of the statute as correct, the bar order in this case was sufficiently ambiguous so as not to bind Chemical to its terms. *See Collins* at 537.

3. Contrary to the movants assertions, nothing in the law requires a hearing to determine the allowability of an amendment to a claim where there are no objections asserted against the underlying claim, and moreover, where the debtor, as debtor-in-possession, consents to the amendment. *See* Bankr.R.P. 715; Fed.R.Civ.P. 15.

4. The Court acknowledges that it may have been preferable for the movants to have objected to the Chemical claim only after the Debtors, upon application, refused to do so. *See In re Meade Land & Development Co., Inc.*, 1 B.R. 279, 282 (Bkrtcy.E.D.Pa.1979). However, any such application in this instance clearly would have been futile. Furthermore, at this point in the case the Court does not anticipate that affording the movants standing to object will provide the momentum for future piecemeal litigation in these proceedings. Therefore, the Court has elected

usury are erroneously based on the assumption that the interest claimed by Chemical was solely pre-petition, rather than both pre- and post-petition interest. In addition, their contention that Chemical's proof of claim, which substantially conformed to Official Form Number 19 was insufficient inasmuch as it lacked a detailed breakdown of interest charges is wholly unpersuasive. *See In re Killanna Realty & Construction Co., Inc.*, 68 F.2d 718 (2nd Cir.1934) (proof of claim may be informal, irregular or defective). Therefore their allegations cannot serve to bar the amendment.

However, the Chemical claim, as amended does include an amount reflective of post-petition interest. Indeed both the Debtors and Chemical in response to the movants objections to the claim, admit as much. In view of this Chemical's claim, as amended, is hereby reduced from $61,963.68, the amount claimed by Chemical, to $57,855.01, an amount equal to principal plus pre-petition interest, calculated in accordance with the terms of the underlying note and guaranty. *See* 11 U.S.C. § 502(b)(2).*

### B. *Revocation of Confirmation*

Code section 1144 provides, in part:

On request of a party in interest at any time before 180 days after the date of entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if such order was procured by fraud....

In support of its motion to revoke the order confirming the Debtors' Plan, EAB and MBLM, besides objecting to Chemical's late filed proof of claim and ballot, reiterate a litany of other objections, most of which are not new and none of which constitute fraud upon which such relief may be granted.

The movants claim, *inter alia*, that: (1) the Plan was proposed in bad faith because the debtors will maintain a high standard of living at the creditors expense; (2) creditors would receive more in a liquidation; (3) the Herbert Valentine estate is an insider and therefore should be disqualified from voting[5]; (4) the claims of attorney Richard Goldwater should not be counted because of an alleged conflict of interest; and (5) the claims of certain other creditors, besides Chemical's claim, were also improperly upgraded just prior to confirmation, and should therefore be disallowed for voting purposes.

EAB's and MBLM's assertions of bad faith and their objections that liquidation would generate greater benefits are neither supported by evidence and, in any event, should have been raised at the hearings on the Debtor's disclosure statement or at confirmation. Indeed, the Court has already determined that the Plan will provide a greater return to creditors than they would receive in liquidation. See 11 U.S.C. § 1129(a)(7). Similarly, any objection to Mr. Goldwater's claim based on a conflict of interest, if even appropriate, also should have been raised at confirmation. None of these objections therefore provide a sufficient basis for revocation.

On the other hand, the suggestion of fraud and possible criminal misconduct, which underlies the movants allegation of improper claim inflation, has been scrutinized by the Court and indeed is a source of great concern to this Court. See 18 U.S.C. § 152. The notion that at the eleventh hour, after the June 13 bar date for voting and filing claims had passed, the value of certain claims were enhanced in order to create a consenting class of creditors is troublesome. In fact, certain claims besides Chemical's were increased just prior to confirmation, although not by any material amounts. Chemical's late filed proof of claim and ballot, however, apparently did provide the swing vote needed to secure class acceptance under section 1126(b). According to the movants, the

---

to set technicalities aside in favor of hearing the objections on their merits. *See Id.*

**5.** At the confirmation hearing the Court heard and rejected this argument and therefore now declines to entertain the objection again.

bare possibility that acceptance was therefore the product of artifice recommends that at least for voting purposes only, the Chemical claim should be allowed, if at all, in an amount no greater than the $48,-000.00 listed on the Debtor's schedules. In the alternative, they argue, the simple fact that Chemical's ballot in favor of confirmation was also apparently filed after the June 13 voting deadline requires that Chemical's vote be completely discounted.[6] In either event, they claim, the result should be to drop the total number of unsecured claims voting in favor of the Plan below the two-thirds amount required for acceptance and would mandate the revocation. However, in the Court's opinion the grounds set out by EAB and MBLM do not provide a sufficient basis for the revocation of the Debtor's Plan.

In the first place, the Court has already determined that the Chemical claim, as amended and allowed in the amount of $57,855.01, reflects the Debtor's actual liability to Chemical. As of the petition day Chemical was entitled to both principal and pre-petition interest. Although Chemical voted and amount of $61,963.68, which exceeded its entitlement, the excess of $4,108.67 did not contribute to the margin needed for class acceptance.

█ More important however, and regardless of the proper amount of Chemical's claim, revocation under section 1144 requires a showing of actual fraud. Yet in this case nothing establishes such fraud. Indeed, there is no evidence that Chemical's vote was improperly solicited, or that Chemical's motive for filing its proof of claim and its reason for voting in favor of what is nearly a 100% plan, was based on anything other than economic self-interest. Although the late filing of Chemical's claim and ballot arguably raise an appearance of impropriety in this case, this standing alone is not sufficient evidence of actual fraudulent intent. *See In re Isidor Klein, Inc.,*

22 F.2d 906, 908 (2d Cir.1927) (fraud as a basis for revocation may not be inferred).

Therefore while it would be ideal for the Court to reach back now and correct any irregularity or eradicate any suggestion of possible wrongdoing, absent a showing of actual fraud this cannot be done at the expense of a confirmed plan. In the words of one commentator, regarding revocation under § 386 of the Act, "[I]t is immaterial that the fraud complained of ... would have been a bar to confirmation of the plan had it been presented in opposition to confirmation." 9 *Collier on Bankruptcy,* ¶ 11.02[3] (14th ed. 1978). Indeed in a less than ideal world, the Debtors have come up with a realistic plan of reorganization that will provide for nearly full payment of all claims against the estate. The Plan also provides creditors with more than they would receive in liquidation. The Debtor's Plan was the only plan proposed in this case, and not surprisingly all unsecured creditors, with the exception of EAB and MBLM, voted in its favor. In view of this, not only is the Court disinclined to grant a request for revocation, but also finds that it has no authority to do so in the absence of competent evidence that would justify the prescription of such harsh medicine. The request for revocation therefore must be denied.

*Conclusion*

Based on the foregoing, the Court denies the motion to revoke the order of confirmation, and grants the motion to disallow the Chemical claim, but only in an amount equal to that claimed as post-petition interest. The Debtors' cross-motion for costs is denied.

It is so ordered.

---

6. Although the movants themselves are not exactly certain as to when Chemical's ballot was filed, according to a Chemical affidavit, the ballot was filed on June 15, two days after the applicable bar date, along with the Chemical proof of claim.